## NELSON *v.* LADD.

In an action for deceit in the sale of property, in affirming it to be free from incumbrance when the seller knew it was mortgaged for a large sum, the defendant was defaulted ; and it was *held* that the judge might properly, without further proof, certify the act to be wilful and malicious, within the meaning of sec. 10, ch. 200, of the Revised Statutes.

CASE.   The substance of the declaration was, that on the tenth day of December, 1866, the defendant induced the plaintiff to exchange his gray mare valued at $75, and pay defendant $200 for defendant's horse, harness and buggy wagon, by falsely and fraudulently representing said horse, harness and buggy wagon to be his own, free and clear from all incumbrance, well knowing them to be subject to a mortgage made by him to one Rourke to secure payment of his debt to Rourke of $225, and that plaintiff was compelled to pay $225 to discharge said mortgage.

The defendant was arrested upon the writ and committed to jail where he still remains.   At this the first term, Woodward and Wellington appeared for defendant.   Plaintiff proposed to have the case continued ; defendant objected and desired that the case might be disposed of at this term, in order that he might be released from jail as soon as possible. It was suggested that if defendant should be defaulted, the court might assess damages and render judgment at this term.   Defendant became defaulted, and the court appointed the clerk commissioner to assess damages.   The commissioner assessed damages in the sum of $239.24, and judgment was rendered for plaintiff for that sum.   The plaintiff requested the commissioner to report to the court the facts, as grounds of an application for a certificate on the execution under Rev. Stats. ch. 200, sec. 10.

The commissioner reported the following facts :   That defendant mortgaged property in Massachusetts, took it to Rutland, Vt., and sold it to plaintiff, representing to him that it was his own, free and clear from incumbrance, or other claim.   This was without the knowledge or consent of the mortgagee ; the plaintiff was defrauded and damaged to the amount of the execution.   The plaintiff's action is trespass on the case to recover damages thus sustained.   The defendant being called to account for this transaction, called the plaintiff hard names, saying he had cheated him, and the transaction in question was to pay him off.   His conduct was such as to show an intention to defraud.

At the request of defendant's counsel the commissioner further says that "the conversation referred to in the letter [containing the above statement] was made by the defendant after his arrest, and made to the officers who had him in custody."

What follows the words "cheated him" [in the above statement] is the deduction of commissioner—from the fact that defendant became default and failed to defend against the plaintiff's charge, that defendant "by means of his false and fraudulent representations aforesaid, has deceived and defrauded the said plaintiff,"—from the fact that there was no request that commissioner should hear defendant, then in jail, in answer to evidence sustaining that charge,—from the evidence itself, a part

of which was that defendant charged plaintiff with having cheated him and used language implying that his cheat was a compensation for plaintiff's cheat, which, if defendant's charge were true, he probably did not forget in his last transaction with plaintiff. The commissioner understood his commission to be for assessment of damages merely, and made his report on that point in form.

The court thereupon made the following certificate on the execution:

## STATE OF NEW HAMPSHIRE.

CHESHIRE, ss.

In consideration of the record in this case, and the facts appearing in the papers hereto annexed, I hereby certify that the cause of action in this case arose from the wilful and malicious act of the defendant. This order is made subject to the opinion of the whole court upon *habeas corpus* or case reserved.                                      CHAS. DOE,

Presiding Justice at the April Term of said court, 1867.

The commissioner subsequently reported the following additional facts, to wit: That the cause of action arose out of this State; that both plaintiff and defendant live out of the State; that the property mortgaged was out of the State, to wit: in Massachusetts; that the mortgage was between parties in Massachusetts, that the sale of the same was in Vermont, that nothing relating to the cause of action was done or transacted in this State; the writ was brought and remedy sought and arrest made here; stated at request of defendant's counsel.

The court reserved all questions of law, of fact, and of discretion, arising upon the following questions:

1.  Should the certificate have been made on the execution?

2.  If it should not have been made, can it be rescinded or in any way annulled by the presiding justice or by the whole court in vacation or in term?

*Wheeler & Faulkner*, for plaintiff.

The defendant being rightfully held in prison under an execution running against his body, the only question seems to be, whether a certificate that the cause of action arose from the wilful and malicious act of the defendant, was properly placed upon it, and the decision of this depends upon the decision of the question, whether the certificate was *true*.

The word act in the statute has no such limited meaning as is ascribed to it by the defendant's counsel; it is equivalent to the word "action," or "conduct," and may consist as well of words, either written or spoken, as of deeds.

This "act," "action," or "conduct" of the defendant was wilful; that is, it was designed, intentional, and not the consequence of inadvertence. 2 Bouvier's Law Dict. 652. It was, also, malicious, inasmuch as the defendant with bad and unlawful motives, intentionally did a wrong to the plaintiff. 2 Bouvier 98.

Whether the commissioner did, or did not, exceed the strict require-

ments of his commission is immaterial, inasmuch as the defendant, by his default, confessed that he had wilfully and maliciously injured the plaintiff.

The state of facts found by the commissioner was virtually confessed by the default.

It is immaterial within which jurisdiction the cause of action arose. It was properly tried in this, and the statute makes no distinction between cases arising within, and without, the limits of this State.

The defendant is not deprived of the benefit of the poor debtor's oath. The question of the propriety of permitting him to take it, and the time and conditions under which he may be permitted to take it, are referred to another tribunal, which has more time to examine into the circumstances under which the wrong sustained was committed.

*Woodward & Wellington*, for defendant.

The commissioner having been appointed to assess damages and nothing more, concluded his duties when that was done. The record is, "It is ordered that Edward Farrar be appointed commissioner to assess the plaintiff's damages, said commissioner to give notice," &c. So the commissioner had no power, from his appointment, to report facts on which to ground an application for a certificate on the execution. He certainly had no authority to report conclusions or deductions, for the statute directs, among other things, that the court or justices in a proper case and before whom the cause is tried shall make the certificate. The cause was not tried before the presiding justice, and yet he makes the certificate. Rev. Stats. ch. 200, sec. 10.

It seems to us that it is not in the province of the commissioner to do that for which he was not appointed, and his opinion of facts and his deductions rest on the same ground as would the opinion of jurors in a case before whom an action is tried as to whether the act was wilful and malicious or not. *Vide Robinson* v. *Wilson*, 22 Vt. 35.

Words spoken which are untrue as representations of title of property cannot constitute in themselves a "wilful and malicious act." The word "act," deriving its signification from the Latin word "ago," implies force, and such, it seems to us, does the statute contemplate.

The practice, as far as we can learn, in this State, does not furnish a precedent for a certificate on an execution in a suit of this character. If it does, it is certainly difficult to tell where a line can be drawn.

It is objected that the commissioner had any right to draw the conclusion and report that (after words "cheated him,") "and the transaction in question was to pay him off. His conduct was such as to show an intention to defraud." The reasons for the conclusion, as stated by commissioner, are both unjust and absurd. We think that the case of *Robinson* v. *Wilson*, (cited above,) holds that no such inference can be drawn from facts stated. The language used by defendant long after the transaction in question, and when under arrest, seems to us to be very weak evidence on which to hold the defendant in jail. It appears so:

VOL. XLVII.        23

1. Because it is, at most, of a very trifling character.

2. Because it does not appear whether it is true or not that it was a set-off to plaintiff's cheat.

3. Because if it was true it is not proved that defendant had such a fact in view at the time of the transaction.

The facts in the case do not show that what was done was *malicious and wilful.* To render an action wilful and malicious something more is required than fraud in trade.

The case finds that the cause of action arose in another State, between parties of another State. It seems to us that our statute should not be construed to extend to such causes. The statute on this subject is more in the nature of a penalty than a civil remedy, and ought not to extend to doings over which the courts of this State have no criminal jurisdiction.

If this distinction does not prevail as a matter of law, it is truly the exercise of a wise discretion to allow the defendant the benefit of the poor debtor's oath, and if guilty to suffer such punishment as the laws of Massachusetts provide for wrongfully selling mortgaged property, or the laws of Vermont provide for obtaining goods under false pretences.

In a case in 13 Vt. 377, the Supreme Court rescinded an order on an execution where the certificate did not follow the words of the statute of that State. In this case, certainly, the order is made subject to the opinion of the whole court, and it would seem that the court had a reserved power to the full extent of the reservation.

BELLOWS, J. The question before us involves the construction of sec. 10, ch. 200, of the Revised Statutes, which provides that "if the cause of action in any action of trespass, or trespass on the case, has arisen from the wilful and malicious act or neglect of the defendant, the court or justice before whom the action is tried, shall cause a certificate thereof to be made on the back of the execution issued in such action, and the defendant shall not be discharged on giving bond as provided in the preceding chapter."

It is urged by the defendant that this case does not come within the provisions of this law, upon the ground that acts accompanied with force only are contemplated. But we do not so understand it. Actions of trespass on the case are expressly included, as are also injuries arising from mere neglect, if it be wilful and malicious. The only question, therefore, is, whether the act of the defendant causing the injury to the plaintiff was wilful and malicious.

The substance of the charge is, that by falsely and fraudulently representing a certain horse, harness and buggy wagon, to belong to defendant, free from any incumbrance, he induced the plaintiff to buy them, when the defendant in fact well knew them to be under mortgage for $225, which plaintiff was obliged to pay.

By the default the defendant confessed the truth of these allegations, and we think the court would be fully justified in making the certificate upon that ground. The charge was for deceit, for a false affirmation of a clear title in himself, when he knew it was heavily incumbered.

Such an act may well be regarded as both wilful and malicious. He knew his statement to be false, and his purpose must have been to deceive and defraud the plaintiff. It was equivalent to obtaining money by false pretences, and in this State it would be an indictable offence.

We have, therefore, no difficulty in holding that the act was malicious within the meaning of the law. 4 Starkie's Evid. 902, and cases; *Commonwealth* v. *Weldon*, 3 Cush. 558; 2 Greenl. Evid. sec. 453, and cases cited; *State* v. *Avery*, 44 N. H. 392.

It is urged, also, that the cause of action arose in another State; but as this provision in our statute merely concerns the remedy, it is not material where the cause of action arose, so far, at least, as respects this question.

Upon these views,. we hold that the certificate was properly made.